UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT STEPHEN SENTILLES | CIVIL ACTION |
| VERSUS | NO. 21-958 |
| HUNTINGTON INGALLS INC., *et al.* | SECTION M (3) |

## ORDER & REASONS

Before the Court is a motion for partial summary judgment filed by defendant Pelnor, L.L.C. ("Pelnor") seeking dismissal of all claims, allegations, and damages associated with any exposure to asbestos that occurred on or after September 1, 1975, along with the exclusion from trial of any evidence of exposure after that date.[1]  Plaintiff Robert Stephen Sentilles responds in opposition,[2] and Pelnor replies in further support of its motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

**I.   BACKGROUND**

This case involves asbestos exposure.  On October 27, 2020, Sentilles was diagnosed with mesothelioma.[4]  Sentilles filed this suit asserting negligence and strict liability claims against several defendants, alleging that his disease was caused by exposure to asbestos that occurred from the 1950s to the 1980s.[5]  More specifically, Sentilles alleges that from the 1950s to the 1970s, his father worked at Avondale Shipyards ("Avondale") where he encountered asbestos dust and subsequently brought it home on his person and clothing, which resulted in Sentilles's exposure.[6]

---

[1] R. Doc. 62.
[2] R. Doc. 66.
[3] R. Doc. 73.
[4] R. Doc. 60 at 2-3.
[5] *Id.* at 1-20.
[6] *Id.* at 4.

Similarly, Sentilles alleges that from 1968 through approximately 1974, he was secondarily exposed to asbestos dust brought home by his brothers who were employed at Avondale.[7] Further, Sentilles alleges that he was personally exposed to asbestos dust when he worked at Avondale from 1969 to 1972.[8] Finally, Sentilles alleges that he was exposed to asbestos when he worked at Pelnor from July 31, 1974, through 1983.[9]

## II. PENDING MOTION

Pelnor filed the instant motion for partial summary judgment seeking dismissal of all claims, allegations, and damages associated with any exposure to asbestos that occurred on or after September 1, 1975, along with the exclusion from trial of any evidence of exposure after that date.[10] Pelnor argues that Sentilles is barred from bringing tort claims for exposure that occurred after September 1, 1975, because that is the date that mesothelioma became covered by the Louisiana Workers' Compensation Act ("LWCA").[11] Thus, says Pelnor, its tort liability is limited to pre-September 1, 1975 exposure and any evidence of exposure after that date should be excluded from discovery and trial.[12]

In opposition, Sentilles argues that the LWCA does not preclude him from pursuing tort claims for asbestos exposure against Pelnor because his claims accrued prior to September 1, 1975.[13] Plaintiff contends that his deposition testimony and the affidavit of his expert pathologist, Dr. Brent Staggs, establish that he had significant exposure at Pelnor prior to that date.[14] Because the claims accrued before the effective date of the amendment of the LWCA to cover

---

[7] *Id.* at 5.
[8] *Id.* at 6.
[9] *Id.*
[10] R. Doc. 62.
[11] R. Doc. 61-5 at 3-5.
[12] *Id.*
[13] R. Doc. 66 at 2-8.
[14] *Id.* at 5-7.

mesothelioma, Sentilles argues that no authority renders his long-latency claim divisible when exposure straddles the effective date.[15] Thus, Sentilles argues that evidence related to post-September 1, 1975 exposure is discoverable and relevant.[16]

## III.    LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material. *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC*

---

[15] *Id.*
[16] *Id.* 7-8.

*v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

B. Analysis

On September 1, 1975, mesothelioma became a covered occupational disease under the LWCA. *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 864 (5th Cir. 2021) (citing *Austin v. Abney Mills, Inc.*, 824 So. 2d 1137, 1140-41 (La. 2002)). Because the LWCA provides an exclusive remedy that bars tort claims against an employer for workplace injuries (except claims for intentional acts), an injured employee's ability to bring such claims depends upon the date those claims accrued. *Id.* Thus, "[m]esothelioma claims that accrued after the 1975 amendment to the LWCA are barred by the exclusive remedy provision." *Id.*

Under Louisiana law, the "significant tortious exposure theory" determines when a workplace-asbestos-exposure cause of action accrues. *Id.* at 865 (citing *Austin*, 824 So. 2d at 1154). A plaintiff establishes accrual under that theory by presenting "'evidence that the exposures were significant and such exposures later resulted in the manifestation of damages.'" *Id.* (quoting *Austin*, 824 So. 2d at 1154) (alteration and internal quotation marks omitted). "'In asbestos cases, the term "exposure" refers to inhalation of asbestos fibers into the lungs.'" *Id.* (quoting *Abadie v. Metro. Life Ins. Co.*, 784 So. 2d 46, 93 (La. App. 2001). "'Tortious exposures are significant when asbestos dust has so damaged the body that the fibrogenic effects of its inhalation will progress independently of further exposure.'" *Id.* (quoting *Austin*, 824 So. 2d at 1154) (alteration omitted). "'There is no bright line test to establish significant exposure in cases involving latent diseases. However, expert medical testimony establishing that the exposure was sufficient enough to begin the disease process is acceptable to fix the time period for accrual of the cause of action.'" *Id.* (quoting *Abadie*, 784 So. 2d at 65).

Pelnor seeks partial summary judgment precluding Sentilles from pursuing tort claims against it for asbestos exposure that occurred on or after September 1, 1975, and also precluding

evidence of any such exposure from discovery and trial. Although Pelnor does not present any argument or evidence concerning the date on which Sentilles's tort claim accrued, it does admit for the purposes of this motion that Sentilles has alleged a viable claim for pre-September 1, 1975 asbestos exposure at its facility. And Sentilles has presented enough evidence through his deposition testimony and Dr. Staggs's affidavit[17] to support (at this stage of the litigation anyway) his contention that his workplace-asbestos-exposure cause of action accrued before September 1, 1975. As such, it is apparent that Sentilles has alleged a tort claim against Pelnor for workplace asbestos exposure leading to a long-latency disease, namely, mesothelioma.

Because Johnson's mesothelioma claim accrued before September 1, 1975, Pelnor's request to dismiss any claims for post-September 1, 1975 exposure to asbestos finds no foothold in the jurisprudence addressing claims involving long-latency disease. This is because Johnson's cause of action arises from a single legal wrong and is not divisible into multiple claims for each discrete exposure to asbestos over the years of his work at Pelnor, even though these years happened to straddle September 1, 1975.[18] Louisiana's adoption of the significant tortious exposure theory for long-latency disease cases[19] means that once it has been determined that a

---

[17] Pelnor argues that Dr. Staggs's affidavit is irrelevant and should not be considered. R. Doc. 73 at 8-9. But the Court has considered the affidavit at this summary-judgment stage of the case only for the general opinions about mesothelioma expressed therein. The Court shares Pelnor's doubts about the relevance of the affidavit to the extent Johnson seeks to use it to prove the "significance" of his pre-September 1, 1975 exposure.

[18] As Judge Rubin explained long ago:
> [In a long-latency disease case, o]nce injury results there is but a single tort and not a series of separate torts, one for each resultant harm. The cause of action thus created is for all the damage caused by the single legal wrong, and a plaintiff may not split this cause of action by seeking damages for some of his injuries in one suit and for later-developing injuries in another. The cause of action "inheres in the causative aspects of a breach of a legal duty, the wrongful act itself, and not in the various forms of harm which result therefrom …." He does not have a discrete cause of action for each harm.

*Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1136-37 (5th Cir. 1985) (footnotes omitted). Here, it seems to the Court that what is good for the goose is good for the gander: if a plaintiff may not split a cause of action (at least one involving a single disease) as to permit his or her pursuit of supposedly separate claims, nor may a defendant do so to defeat so-called separate claims.

[19] As explained in *Austin*, 824 So. 2d at 1148-54, this theory was first adopted by the Louisiana supreme court in *Cole v. Celotex*, 599 So. 2d 1058, 1062-68 (La. 1992) (adopting significant tortious exposure theory for long-

plaintiff's cause of action for workplace exposure to asbestos accrued before September 1, 1975, the plaintiff has a viable claim to pursue, whether or not exposure to asbestos continued after that date.[20] In other words, because Johnson has asserted a single cause of action, which accrued before September 1, 1975, and so entails no post-September 1, 1975 claims, there simply are no post-September 1, 1975 claims to dismiss. Thus, Pelnor is not entitled to partial summary judgment dismissing any nonexistent claims.

As to Pelnor's request to bar discovery and evidence of any post-September 1, 1975 exposure, the Court will not do so at this juncture because alleged negligence on Pelnor's part, even after September 1, 1975, may be relevant to establish Johnson' claim for workplace exposure accruing before that date. *See Gaddy v. Taylor-Seidenbach, Inc.*, 2019 WL 8112515, at *5 (E.D. La. Oct. 18, 2019) (denying motion to exclude testimony involving post-1975 negligence because "a jury could infer from [d]efendant's alleged negligence involving asbestos-related injuries after 1975 that it did not act differently while [plaintiff] was employed by [d]efendant"). Although Pelnor "is free to object to the introduction of specific pieces of post-1975 testimony [and evidence] at trial, … a categorical ban at this juncture is not appropriate." *Id.* Therefore, Pelnor is not entitled to summary judgment on this basis either.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Pelnor's motion for partial summary judgment (R. Doc. 62) is DENIED.

---

latency disease cases to hold that the law in effect before enactment of comparative fault applied because significant injury-producing exposures to asbestos occurred prior to the act's effective date).

[20] *Cf. Austin*, 824 So. 2d at 1156 (Calogero, C.J., assigning additional reasons) ("If [plaintiff] can prove significant pre-1975 exposures to asbestos, his cause of action 'arose' before the 1975 amendment to the workers' compensation laws. Therefore, regardless of any post-1975 exposures, the subsequent amendments cannot retroactively deprive him of the vested property right to bring a tort action against the employer defendants.").

New Orleans, Louisiana, this 20th day of December, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE