UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT STEPHEN SENTILLES | CIVIL ACTION |
| VERSUS | NO. 21-958 |
| HUNTINGTON INGALLS INC., *et al*. | SECTION M (3) |

## **ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendant Huntington Ingalls Inc. ("Avondale") seeking dismissal of plaintiff's state-law tort claims against it pursuant to the exclusivity provision of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950.[1] Plaintiff Robert Stephen Sentilles and defendant Pelnor, L.L.C. ("Pelnor") respond in opposition.[2] Avondale replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion and dismissing Sentilles's state-law tort claims as preempted by the LHWCA's exclusivity provision.

**I.    BACKGROUND**

This case involves claims of asbestos exposure. On October 27, 2020, Sentilles was diagnosed with mesothelioma.[4] Sentilles filed this suit asserting Louisiana state-law tort claims

---

[1] R. Doc. 123.
[2] R. Docs. 156; 161. Defendants Union Carbide Corp. ("Union Carbide") and Bayer CropScience, Inc., as successor to Rhone-Poulenc AG Co. f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company ("Amchem") also opposed Avondale's motion. R. Doc. 163. Because Sentilles's claims against Union Carbide and Amchem have been dismissed (R. Doc. 215), the Court will not consider or discuss Union Carbide and Amchem's opposition to Avondale's motion for summary judgment.
[3] R. Doc. 163.
[4] R. Doc. 60 at 2-3.

against several defendants, alleging that his disease was caused by exposure to asbestos that occurred from the 1950s to the 1980s.[5]

More specifically, Sentilles claims that he was exposed to asbestos when he worked as a yard clerk in the insulation shop at Avondale's shipyard along the Mississippi River from May 28, 1969, to June 23, 1969.[6] Sentilles testified at his deposition that the insulation shop was a hot and dusty "big tin shed on the wharf" where he made amosite insulation blankets that were used in shipboard applications to cover equipment, such as pipes and machinery.[7] Sentilles remained employed at Avondale until 1972, but he was moved to an office job on June 24, 1969.[8]

Sentilles also claims that he was secondarily exposed to asbestos from his brother Thomas's clothes when his brother Thomas worked at Avondale.[9] At his deposition, Thomas testified that he worked in Avondale's paint department for two months, beginning on May 26, 1969.[10] Thomas worked on the ships, taping off areas in preparation for painting.[11] There were other crafts working at the same time, including insulators, so Thomas assumes that he was exposed to asbestos at Avondale.[12] Thomas and Sentilles did not ride to work together.[13] The brothers shared a bedroom in the family home.[14] Thomas sometimes left his clothes on the bedroom floor and their mother would do the laundry.[15]

---

[5] *Id.* at 1-20.
[6] R. Docs. 176-1 at 2; 123-4 at 3.
[7] R. Doc. 123-4 at 3-5.
[8] Sentilles originally alleged that he was exposed to asbestos when he worked at Avondale from May 1969 until 1972. R. Doc. 60 at 6. This Court granted Avondale's unopposed motion for summary judgment seeking dismissal of Sentilles's claim as it relates to his employment at Avondale after June 23, 1969. R. Doc. 214.
[9] R. Doc. 123-1 at 10. Sentilles also alleged secondary exposure related to his father's and other brother's employment at Avondale. R. Doc. 60 at 4-5. This Court granted Avondale's unopposed motions for summary judgment seeking dismissal of those claims because (1) Sentilles's father was not exposed to asbestos at Avondale and (2) Sentilles moved out of the family home before his other brother started working there. R. Doc. 214.
[10] R. Doc. 123-5 at 3-5.
[11] *Id.* at 3-4
[12] *Id.* at 4-5.
[13] *Id.* at 8.
[14] *Id.* at 7.
[15] *Id.* at 7-9.

Finally, Sentilles alleges that he was exposed to asbestos when he worked at Pelnor from July 31, 1974, through 1983.[16]

## II. PENDING MOTION

Avondale filed the instant motion for summary judgment arguing that Sentilles's Louisiana state-law tort claims against it are preempted pursuant to the exclusivity provision of the LHWCA.[17] Avondale argues that the version of the LHWCA that was in effect at the time Sentilles's mesothelioma manifested in 2020 applies and, as a result, Sentilles's employment in Avondale's insulation shop meets the LHWCA's status and situs test.[18] Thus, argues Avondale, Sentilles's state-law tort claims are preempted by the LHWCA.[19] Avondale further argues that Sentilles's take-home exposure claim related to his brother Thomas's employment is covered by the LHWCA because that exposure was incidental to Sentilles's own employment or, alternatively, the LHWCA's non-apportionment rule applies since at least part of Sentilles's claim is covered by the LHWCA.[20]

In opposition, Sentilles and Pelnor argue that the "first significant exposure," not the "time of manifestation," rule should be used to determine which version of the LHWCA applies.[21] And, Sentilles's first significant exposure to asbestos at Avondale occurred in 1969, meaning that an older version of the LHWCA applies, which does not cover Sentilles's work at Avondale.[22] Sentilles also argues that his take-home exposure claim is not preempted by the LHWCA because it is separate and distinct from his employment at Avondale.[23] Further, Pelnor argues that

---

[16] R. Doc. 60 at 6-7.
[17] R. Doc. 123.
[18] R. Doc. 123-1 at 5-8.
[19] *Id.* at 8-10, 16-33.
[20] *Id.* at 10-16.
[21] R. Docs. 161 at 1-11; 156 at 1-17.
[22] R. Docs. 161 at 1-11; 156 at 1-17.
[23] R. Doc. 161 at 11-12

3

Avondale is taking inconsistent litigation positions by bringing this motion for summary judgment after pleading crossclaims and third-party claims for virile share liability.[24]

In its reply, Avondale distinguishes the cases relied upon by Sentilles and Pelnor with respect to the LHWCA preemption issue.[25] Avondale also argues that Sentilles's take-home exposure claim is preempted by the LHWCA because the statute covers the occupational disease itself, not each individual injury that led to it, and apportionment of covered versus non-covered exposures is impossible.[26] Finally, Avondale argues that there is nothing inconsistent about pleading rights and affirmative defenses in the alternative.[27]

## III.   LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate

---

[24] R. Doc. 156 at 17-21.
[25] R. Doc. 180 at 1-13.
[26] *Id.* at 13-17.
[27] *Id.* at 19-20.

4

the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

### B. Analysis

#### 1. Preemption of Sentilles's Claims Against Avondale Arising Out of His Employment

Other sections of this court have thoroughly considered and accepted Avondale's LHWCA preemption argument, granting summary judgment on this basis in *Hulin v. Huntington Ingalls, Inc.*, 2020 WL 6059645 (E.D. La. Oct. 14, 2020); *Krutz v. Huntington Ingalls, Inc.*, 2021 WL 5893981 (E.D. La. Apr. 22, 2021); *Barrosse v. Huntington Ingalls Inc.*, 2021 WL 4355415 (E.D. La. Sept. 24, 2021), *appeal docketed*, No. 21-30761 (5th Cir. Dec. 20, 2021); *Hotard v. Avondale Industries, Inc.*, No. 20-1877, R. Doc. 271 (E.D. La. Jan. 26, 2022); and *Cortez v. Lamorak Insurance Co.*, 2022 WL 1001445 (E.D. La. Apr. 4, 2022).  This Court, having read and considered each of these cases, along with the arguments made here by Avondale, Sentilles, and Pelnor (which mirror the arguments raised in the other cases), agrees with the reasoning of these cases.

In describing the LHWCA, the court in *Cortez* stated as follows:

> The LHWCA is a federal workers' compensation statute providing covered maritime workers with "medical, disability, and survivor benefits for work-related injuries and death." *MMR Constructors, Inc. v. Dir., Office of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020) (citation and internal quotation marks omitted). Before 1972, the statute covered only workers on "navigable waters of the United States (including any dry dock)." *Id.* (citing 33 U.S.C. § 903(a) (pre-1972)).  But, in 1972, Congress amended the Act and "extend[ed] the LHWCA landward." *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719 (1980).

*Cortez*, 2022 WL 1001445, at *3.

### a. Applicable version of the LHWCA

Here, as in *Cortez*, Sentilles argues that the pre-1972 version of the LHWCA applies because he sustained his first significant exposure to asbestos not later than 1969. Avondale, as it did in *Cortez*, contends that the post-1972 version of the law applies because Sentilles's disease manifested in 2020 when he was diagnosed with mesothelioma. In explaining why the post-1972 version of the LHWCA applies in this scenario, the court in *Cortez* stated:

> Courts use the "date of injury" to determine which version of the LHWCA applies. *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1029 (5th Cir. 1985). In the context of long-latency diseases arising from asbestos exposure, the Fifth Circuit in *Castorina* held that manifestation, not exposure, determines the date of injury. *Id.* at 1031. There, plaintiff's disease, asbestosis, manifested in 1979. *Id.* at 1028. His exposures occurred between 1965 and 1972. *Id.* at 1027. The Fifth Circuit looked to judicial authority stating that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself." *Id.* (quoting *Grain Handling Co. v. Sweeney*, 102 F.2d 464 (2d Cir.), *cert. denied*, 308 U.S. 570 (1939)). It also inferred Congress's intent from Congress's express adoption of the manifestation rule in 1984. *Id.* (citing Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639 (1984)). In the 1984 amendments to the LHWCA, Congress provided a specific definition of "injury" for occupational diseases:
>
>> [I]n the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease....
>
> Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639 (1984). Under *Castorina* and the 1984 amendments, [plaintiff] Cortez's injury is deemed to arise on the date it manifested. Because [plaintiff's] disease manifested in 2020, the Court applies the LHWCA as it existed in 2020, the date of his injury.
>
> Plaintiff disputes this legal conclusion by pointing to dicta in a footnote in *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 466 n.6 (5th Cir. 2016), in which the Fifth Circuit stated:
>
>> Defendant's preemption defense is governed by the law *at the time* [*plaintiff*] *was exposed to asbestos*, which occurred before the

7

> Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act. *See* La. Rev. Stat. 23:1035.2 (providing that "[n]o compensation shall be payable in respect to the disability or death of any employee covered by ... the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions ...").

*Id.* (emphasis added). The Court does not find that this footnote has the import plaintiff attributes to it.

In the *Savoie* opinion, the court makes clear that it is discussing the applicable version of state law. For example, in the footnote upon which plaintiffs rely, the Fifth Circuit noted that the plaintiff's exposure "occurred before the Louisiana Worker's Compensation Act was amended in 1989 to eliminate any concurrent coverage between that Act and the federal Longshore and Harbor Workers' Compensation Act." *Id.* (citing La. Rev. Stat. § 23:1035.2). If the court were not referring to the appropriate version of state law, there would have been no need to discuss the elimination of concurrent state-federal workers' compensation coverage. The references to state law in the same footnote and throughout the opinion support the Court's conclusion that the Fifth Circuit was referring to the applicable state law, not which version of the LHWCA applies. *See id.* at 464 ("[Wrongful death] claims are governed by the [state] law in effect at the time the decedent passes away," but "survival claims based on asbestos exposure are governed by the [state] law in effect when the exposure occurred." (first citing *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1072 (La. 2009), and then citing *Landry v. Avondale Indus., Inc.*, 877 So.2d 970, 972 (La. 2004)). Further, the Fifth Circuit expressly stated that it did not decide whether defendant had a colorable federal preemption defense. *Id.* at 466. One Fifth Circuit panel cannot overrule another without an intervening change in the law, *see United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003), and in the event of a conflict, the earlier case controls. *Texaco Inc. v. La. Land & Expl. Co.*, 995 F.2d 43, 44 (5th Cir. 1993). But in any event, the Court does not find that the Fifth Circuit intended to overrule its earlier, reasoned decision in *Castorina* by way of dicta in a footnote.

Because *Castorina*'s manifestation rule controls, the Court applies the LHWCA as it existed in 2020, when [plaintiff's] mesothelioma manifested.

*Cortez*, 2022 WL 1001445, at *3-5 (footnotes omitted).

The same holds true in this case. Sentilles's mesothelioma manifested in 2020. Thus, the post-1972 version of the LHWCA applies.[28]

---

[28] Sentilles argues that this Court must apply the first significant exposure rule to this issue because it applied that rule in resolving Pelnor's motion for summary judgment regarding the applicability of the *Louisiana* Worker's

### b. Applicability of the post-1972 LHWCA to Sentilles's injuries

In applying the post-1972 LHWCA, the court in *Cortez* explained the Act's status and situs requirements:

> Since the 1972 amendments, the LHWCA covers injuries of workers who meet the Act's "status" and "situs" requirements. *See New Orleans Depot Servs. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 389 (5th Cir. 2013). Plaintiff [Cortez] easily meets these criteria.
>
> The "status" requirement limits application of the LHWCA to "traditional maritime occupations." *Id.*; *see* 33 U.S.C. § 902(3) (defining "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker" (emphasis added)). The status test is satisfied when the person is "directly involved in an ongoing shipbuilding operation." *Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977).
>
> Plaintiff worked as a tacker helper and welder on vessels at Avondale's Westwego Yard. This type of work satisfies the status test because it is an "essential step of the shipbuilding process." *Id.* (holding that a worker who died when a steel plate he was cleaning fell on him satisfied the status test because the "cleaning task was an essential step of the shipbuilding process"); *see also McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) (stating that the LHWCA applies to "longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters"); 1 Robert Force and Martin J. Norris, *The Law of Maritime Personal Injuries* § 3:9 (5th ed.) (stating that the LHWCA specifically includes "any harborworker," which includes "shipcleaners, tank cleaners, riggers, carpenters, ship ceilers, cargo checkers, cargo weighers, cargo talleyers, port watchmen, electricians, painters, mechanics, etc."). Thus, the Court finds that the LHWCA's status test is satisfied.
>
> The "situs" test, extended by Congress in 1972, requires that the injury occur on the "navigable waters of the United States" and "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a); *see also Sun Ship*, 447 U.S. at 719 ("In 1972, Congress ... extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States."). There is no dispute that Cortez's exposure to asbestos occurred in a covered situs – Avondale Shipyards. *See Pitre v. Huntington Ingalls,*

---

Compensation Act. R. Doc. 161 at 1. The federal law at issue here (the LHWCA), not the state law at issue in Pelnor's motion, requires the application of federal law. "The *Erie* doctrine does not apply … in matters governed by the federal Constitution or by acts of Congress." *Grantham v. Avondale Indus., Inc.*, 964 F.2d 471, 473-74 (5th Cir. 1992). Consequently, while in a diversity case such as this, federal courts are bound to look to the state's interpretation of its own law, they are not so bound on matters of federal law.

*Inc.*, No. 17-7029, 2018 WL 2010026, at *3 (E.D. La. Apr. 30, 2018) ("Avondale's vessel construction and repair activities occurred on the west bank of the Mississippi River adjacent to navigable waters.").

*Cortez*, 2022 WL 1001445, at *5.

Sentilles worked in Avondale's insulation shop, which was located on a wharf on the Mississippi River, making amosite insulation blankets that were used in the shipbuilding process. Thus, as true for Cortez, Sentilles's work satisfies the status test as an "essential step of the shipbuilding process" and falls within the LHWCA's coverage. Likewise, Sentilles's injuries occurred on the same covered situs as did Cortez's, namely, Avondale's shipyard. Therefore, the Court finds that Sentilles could have brought his claims under the LHWCA.

### c. LHWCA preemption of tort claims against employers

As in *Cortez,* Avondale contends here that the LHWCA immunizes it from tort liability for Sentilles's occupational exposure claims. The court in *Cortez* addressed the parties' competing arguments on this point, reasoning:

> Section 905(a) of the LHWCA, the employer immunity provision, states:
>
>> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death....
>
> 33 U.S.C. § 905(a). Based on this provision, Avondale argues that plaintiff's state-law tort claims conflict with the LHWCA, and are therefore preempted. The opposing parties contend that a state may constitutionally provide for state-law tort remedies concurrently with the LHWCA, and that, therefore, the LHWCA does not preempt plaintiff's claims.
>
> Federal law applies to questions of preemption. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995). Federal law can preempt state law in three ways: (1) express preemption, where Congress expresses an explicit intent to preempt state law; (2) field preemption, where the "sheer comprehensiveness" of the federal scheme implies congressional intent to preempt state regulation in the area; or (3)

10

conflict preemption, where the state law either directly conflicts with the federal law or interferes with the regulatory program established by Congress. *Id.* The U.S. Supreme Court has set out "two cornerstones" of preemption jurisprudence. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). First, the "ultimate touchstone" is "the purpose of Congress." *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Second, the Court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," especially when the case involves a "field which the states have traditionally occupied." *Id.* (quoting *Lohr*, 518 U.S. at 485) (quotation marks omitted).

Because tort law is a field traditionally occupied by the States, the Court starts with the assumption that Congress did not intend to supersede state law when it enacted the LHWCA. But this assumption does not stand in face of the text of the LHWCA, the purpose behind the statute, and the weight of judicial authority.

Section 905(a) of the LHWCA provides that compensation under the LHWCA is exclusive of all other employer liability, including for actions to recover damages at law. 33 U.S.C. § 905(a). The plain language of this provision "evidences an unmistakable intention to embody the *quid pro quo* that defines most workmen's compensation statutes." *Cobb* [*v. Sipco Servs. & Marine, Inc.*], 1997 WL 159491, at *7 [(E.D. La. Mar. 27, 1997)] (citing *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 950 (3d Cir. 1990)). Specifically, the employee gets the benefit of no-fault compensation, and the employer enjoys immunity from tort liability for damages. *Id.* The Supreme Court recognized this exchange when it explained:

> [T]he [LHWCA is] not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquish their defenses to tort actions in exchange for limited and predictable liability. Employees accepted the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

*Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 636 (1983). Allowing state-law tort claims against employers would contradict the text of the statute and would frustrate the Act's purpose by undermining the *quid pro quo*.

Indeed, several courts have recognized as much. The Fifth Circuit held in *Rosetti v. Avondale Shipyards, Inc.*, that the LHWCA bars a "state law negligence claim," because "[u]nder the LHWCA, workers compensation is the exclusive remedy for an injured employee against his employer." 821 F.2d 1083, 1085 (5th Cir. 1987). Further, in *Hetzel v. Bethlehem Steel Corp.*, the Fifth Circuit found that "[p]reemption of [a] state [tort] act is required to avoid frustration of the policies and purpose behind the LHWCA." 50 F.3d at 366-67 (5th Cir. 1995). In *Hetzel*,

11

the court reasoned that "[c]ongressional policy would be frustrated if an injured worker were allowed to collect benefits under the Act, and then sue his employer under a state statutory tort theory." *Id.* Similarly, the Third Circuit in *Peter v. Hess Oil Virgin Islands Corp.*, concluded that "§ 905(a) [of the LHWCA] and the Supremacy Clause bar the Virgin Islands from imposing negligence liability on [a covered employer.]" 903 F.3d at 953. The *Peter* court specifically noted that Congress "intended that compensation, not tort damages, [was] to be the primary source of relief for workplace injuries for longshoremen against their employers." *Id*. at 952.

Moreover, this Court has held, in three separate cases, that the LHWCA preempts a state tort claim. *See Krutz*, 2021 WL 5893981, at *7; *Hulin*, 2020 WL 6059645, at *7; *Cobb*, 1997 WL 159491, at *8 ("[A]pplication of Louisiana tort law, which plaintiff concedes is not a workmen's compensation remedy, does not further the availability of no fault compensation, and it obstructs the purposes of the LHWCA."). Other sections of this Court have held the same. *See Barrosse*, 2021 WL 4355415, at *10-11; *Dempster* [*v. Lamorak Ins. Co.*], 2020 WL 5071115, at *7 [(E.D. La. Aug. 26, 2020)].

Because permitting plaintiff's state tort claims against Avondale as his employer would obstruct the purposes of the LHWCA, the Court finds that these claims are preempted and must be dismissed.

The opposing parties' arguments to the contrary are without merit. First, they dedicate much of their briefing to the contention that [plaintiff's] injuries occurred in the so-called "twilight zone" of concurrent state-federal jurisdiction, and that his state claims are therefore permissible. Consistent with prior district-court opinions, the Court rejects this argument.

The Supreme Court has long held that there are areas where a state may legislate concurrently with the LHWCA. In *Sun Ship, Inc. v. Pennsylvania*, the Supreme Court addressed the "single question" of "whether a State may apply its *workers' compensation scheme* to land-based injuries that fall within the coverage of the [LHWCA], as amended in 1972." 447 U.S. at 716 (emphasis added). Extending its prior "twilight zone" jurisprudence, the Court unanimously held that it may, *i.e.*, that the LHWCA does not preempt concurrent state workers' compensation remedies in these areas. *Id.* The Court reasoned that, in the 1972 amendments to the Act, Congress intended to "upgrade the benefits" available under inadequate state compensation regimes, by guaranteeing the option of federal compensation available under the LHWCA. *Id.* at 723. *Sun Ship* and other "twilight zone" cases make clear that a state is not entirely precluded from providing workers' compensation remedies to workers covered by the LHWCA. Similarly, in *Hahn v. Ross Island Sand & Gravel Co.*, the U.S. Supreme Court found that the LHWCA did not preclude a plaintiff's negligence claim brought pursuant to Oregon's *workers' compensation statute*. 358 U.S. 272, 273 (1959). The plaintiff in *Hahn* sought benefits through Oregon's compensation regime, but his employer "elected

12

> to reject them." *Id.* In these circumstances, Oregon's Workmen's Compensation Act allowed the employee to bring a negligence action for damages. The Court expressly stated that the LHWCA "gave an injured waterfront employee an election to recover compensation under *either* the [LHWCA] or *the Workmen's Compensation law of the State* in which the injury occurred." *Id.* (emphasis added). *Hahn* does not, as the opposing parties contend, hold that the LHWCA permits ordinary tort claims. Rather, like *Sun Ship*, it holds that a plaintiff may elect between federal compensation under the LHWCA or state workers' compensation.
>
> Unlike in *Sun Ship* and *Hahn*, plaintiff here has not brought his claims pursuant to a state workers' compensation regime. Instead, plaintiff asserts freestanding state tort claims against his employer. For the reasons already given, the LHWCA preempts these claims against Avondale.
>
> Second, the opposing parties argue that preemption does not apply because plaintiff is not seeking benefits under the LHWCA. This Court has rejected this argument before, and it rejects it again. *See Krutz*, 2021 WL 5893981, at *8 (rejecting plaintiff's contention that his claims are not preempted because he was not seeking LHWCA benefits); *Hulin*, 2020 WL 6059645, at *7 (same). The Fifth Circuit has made clear that, if the LHWCA covers an employee's injury, his only remedy against an employer lies in workers' compensation. *Rosetti*, 821 F.2d at 1085. That plaintiff has not elected to pursue those benefits does not affect the preemptive power of the Act. Permitting the tort claim merely because plaintiff has foregone the LHWCA avenue would conflict with LHWCA's text and undermine the *quid pro quo* that Congress enacted.
>
> Third and finally, the opposing parties passingly contend that a dismissal of plaintiff's claims against Avondale as his employer would violate due process by divesting them of a right in their accrued claims. They assert that such a result amounts to a denial of due process. Consistent with prior rulings, this Court finds that neither the retroactive nor preemptive effects of the LHWCA raise due-process concerns. *See, e.g.*, *Krutz*, 2021 WL 5893981, at *11-12 (rejecting arguments that LHWCA preemption divested a worker of his negligence claim in violation of due process). The opposing parties have given the Court no reason to reach a different result in this case, and have thus failed to carry their burden of establishing a due-process violation.
>
> For these reasons, the Court finds that the LHWCA preempts plaintiff's state-law negligence claims against Avondale, in its capacity as plaintiff's employer. The Court grants Avondale's motion for summary judgment as to these claims.

*Cortez*, 2022 WL 1001445, at *6-8 (footnote omitted; emphasis in original).

This Court agrees with the thorough and careful reasoning set forth in *Cortez* and, accordingly, grants Avondale's motion for summary judgment as to Sentilles's occupational exposure claim.

### 2. Preemption of Sentilles's Claims Against Avondale Arising Out of His Brother's Employment

Sentilles also raises a take-home exposure claim against Avondale related to his brother Thomas's employment at Avondale. Sentilles and Thomas, who shared a bedroom in the family home, both worked at Avondale at the same time in the summer of 1969. Avondale argues that Sentilles's take-home claim is preempted because he and his brother were coworkers and the exposures at home and work during the same time period cannot be apportioned between those covered and those not covered.

*Cortez* also involved a take-home exposure claim. *Cortez*, 2022 WL 1001445, at *8-11. In that case, the plaintiff's take-home claim involved exposures that occurred when he was a teenager and his older brother, who was employed by Avondale, allegedly brought asbestos fibers into the home. *Id.* at *8. The court there began its analysis of the question by looking to the language of the LHWCA:

> The LHWCA covers "accidental injury or death *arising out of and in the course of employment*, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury." 33 U.S.C. § 902(2) (emphasis added). Similarly, the exclusivity provision of the LHWCA provides that the "liability *of an employer* prescribed in ... this title shall be exclusive and in place of all other liability of such *employer* to the *employee*." 33 U.S.C. § 905(a) (emphasis added); *see also Rosetti*, 821 F.2d at 1085 ("Under the LHWCA, workers['] compensation is the exclusive remedy for an injured *employee* against his *employer*." (emphasis added)).

*Id.*

Relying on this language, the court in *Cortez* held that because Cortez's take-home exposure claim as to his brother's work at Avondale, when Cortez was a teenager, did not arise

14

out of, and did not occur in the course of, Cortez's own eventual and temporally disparate employment with Avondale, he was not deprived of a tort claim for non-employment injuries. *Id.* at *9. Thus, the court emphasized that the take-home exposure "predated and [was] unrelated to plaintiff's eventual work for Avondale." *Id.* As such, Cortez was not seeking to impose any liability as an employer (which would be preempted by the LHWCA), "but instead, liability as a non-employer tortfeasor to a then-unrelated third party." *Id.* The court further noted, however, that a "plaintiff's exposure to his *own* clothes, and his *own* coworkers' clothes, on his *own* ride to and from work, during his *own* employment with Avondale, is covered by the LHWCA." *Id.* at *10.

This case is factually distinguishable from *Cortez*. Here, unlike in *Cortez*, Sentilles and Thomas were employed at Avondale shipyard *at the same time*. They started working at Avondale on virtually the same date (within two days of each other) and remained employed together at Avondale's shipyard until late July or early August 1969, when Thomas's employment ended. Sentilles continued to work at Avondale until 1972. Sentilles's take-home exposure claim related to Thomas's work at Avondale coincides with his own time at Avondale when he was exposed to asbestos in the insulation shop. Even after Sentilles left the insulation shop and continued to work at Avondale, he could have been exposed to asbestos through his interactions with coworkers, including his own brother Thomas. Thus, any exposure to Thomas's clothing was incidental to Sentilles's own employment at Avondale when the brothers were both employed there at the same time. The Court finds, then, that Sentilles's take-home or off-site exposures to asbestos arose out of and in the course of his employment at Avondale and are therefore covered by the LHWCA. *See Barrosse*, 2021 WL 4355415, at *6-8. Accordingly, Sentilles's take-home exposure claim, like his occupational exposure claim, is preempted by the LHWCA.

### 3. Estoppel of Avondale's Inconsistent Positions

Pelnor argues that Avondale should be estopped from asserting what it deems to be inconsistent positions in its pleadings. Pelnor points out that Avondale made crossclaims and third-party claims for virile share liability, which would only lie if Sentilles's claims accrued prior to 1980.[29] Hence, says Pelnor, Avondale's position that the date of injury was 2020 under the manifestation rule applied by federal law is at odds with the basis for its crossclaims and third-party claims.[30]

As Avondale points out, however, the law allows parties to plead rights and defenses in the alternative. Indeed, Rule 8 of the Federal Rules of Civil Procedure states that a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically" and that it "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)-(3). Thus, the rules expressly permit alternative pleading as well as the assertion of claims or defenses regardless of consistency. Therefore, the Court will not estop Avondale from asserting its LHWCA preemption defense.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Avondale's motion for summary judgment (R. Doc. 123) is GRANTED, and Sentilles's state-law tort claims against it are DISMISSED WITH PREJUDICE as preempted by the LHWCA's exclusivity provision.[31]

---

[29] R. Doc. 156 at 17.
[30] Id.
[31] This order renders moot Sentilles's motion to exclude Avondale's expert Christopher P. Herfel (R. Doc. 158) and Sentilles's motion for summary judgment on Avondale's government immunity defense (R. Doc. 159).

New Orleans, Louisiana, this 22nd day of April, 2022.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE