UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ROBERT STEPHEN SENTILLES                    CIVIL ACTION

VERSUS                                       NO. 21-958

HUNTINGTON INGALLS                           SECTION M (3)
INCORPORATED (f/k/a
AVONDALE SHIPYARD), *et al.*


**ORDER & REASONS**

Before the Court is a motion *in limine* to exclude defense expert Christopher P. Herfel filed

by plaintiff Robert Stephen Sentilles.[1]  Defendant Huntington Ingalls Incorporated ("Avondale")

responds in opposition.[2]  Having considered the parties' memoranda, the record, and the applicable

law, the Court denies the motion because Herfel is qualified to render the opinions stated in his

report, and those opinions are relevant and reliable and would be helpful to the jury.

**I.       BACKGROUND**

This case involves claims for asbestos exposure.  On October 27, 2020, Sentilles was

diagnosed with mesothelioma.[3]  Sentilles filed this case asserting negligence and strict liability

claims against several defendants, including Avondale, alleging that his disease was caused by

asbestos exposure that occurred from the 1950s to the 1980s.[4]  With respect to Avondale, Sentilles

asserts that he was personally exposed to asbestos when he worked at the shipyard in 1969 and

that he was secondarily exposed from his brother Tom Sentilles's clothing "while living with,

---

[1] R. Doc. 325.
[2] R. Doc. 346.
[3] R. Doc. 60 at 2-3.
[4] *Id.* at 1-20.

encountering, and riding to and from work with [him] while [Tom was] employed by Avondale."[5] At his deposition, Sentilles testified that he was exposed to asbestos when he worked in Avondale's insulation shop from May 28, 1969, to June 24, 1969, sewing asbestos blankets that were installed on vessels under construction in Avondale shipyard.[6]  During that time, Avondale was building ships under contracts with the United States Navy, the United States Coast Guard, and the United States Maritime Administration ("MARAD"), among others.[7]  Sentilles remembered that some of the asbestos blankets were installed on the Navy vessels.[8]

Because Avondale was building vessels for the United States government in 1969, Avondale has raised affirmative defenses of derivative sovereign immunity under *Yearsley v. W.A. Ross Construction Co.*, and government contractor immunity under *Boyle v. United Technologies Corporation*.[9]  Avondale hired Herfel as an expert witness to support these defenses.[10]  Herfel, a marine engineer and former Navy officer, issued two expert reports examining the historic specifications, policies, practices, and knowledge of the Navy, Coast Guard, and MARAD regarding the asbestos materials they required to be used on their vessels.[11]

Herfel's reports begin with a recitation of his education, qualifications, and experience.[12] He has a bachelor of science degree in marine engineering, with a minor in shipyard engineering management.[13]  Herfel served eight years as a commissioned officer in the United States Naval Reserve and currently holds a Coast Guard-issued third assistant engineer's license, steam & diesel

---

[5] *Id*. at 4-5.
[6] R. Doc. 346-1 at 2-10, 16-22.
[7] R. Doc. 346-2 at 3-8.
[8] R. Doc. 346-1 at 11-14.
[9] R. Doc. 64 at 10.
[10] R. Doc. 346 at 2-3.
[11] R. Docs. 325-2; 325-3.
[12] R. Doc. 325-3 at 1-2.
[13] R. Doc. 325-4 at 4.

propulsion, unlimited horsepower.[14]  He has experience as a shipyard superintendent, managing the repair and overhaul of various types of military and merchant vessels, which included asbestos abatement work.[15]  Herfel is currently the president and chief executive officer of McCaffery & Associates, Inc., which specializes in researching and analyzing Navy, Coast Guard, and other government documents related to ship design, construction, maintenance, and repair.[16]  For the past 21 years, Herfel has researched and interpreted contracts, specifications, and other records concerning the materials used in the construction, maintenance, and repair of federal vessels in order to explain and contextualize the government's historic policies regarding asbestos.[17]  In doing this work, Herfel "combines his past experiences in shipyard operations, ship design, marine engineering, naval policies, and employment working on U.S. Navy and merchant vessels to analyze and interpret detailed correspondence, blueprints, specifications, and contracts."[18]  He has also researched and analyzed documentation regarding the government's historic knowledge of the hazards associated with materials used on federal vessels, particularly asbestos.[19]

Next, Herfel describes the case-specific evidence he reviewed, including various depositions, Sentilles's Avondale employment records, and vessel construction contracts and specifications.[20]  He also researched records pertaining to the government ships that were constructed and repaired at Avondale before, during, and after Sentilles's employment at the shipyard.[21]

---

[14] *Id.* at 1, 3.
[15] *Id.* at 3.
[16] *Id.* at 1-2.
[17] *Id.*
[18] *Id.* at 1.
[19] *Id.*
[20] R. Doc. 325-2 at 2-4.
[21] *Id.*

Herfel essentially renders two opinions.  First, Herfel opines that the government, as stated in its contracts and vessel specifications, required asbestos-containing materials to be used on its vessels, and Avondale was required to act in "strict compliance" with that requirement.[22]  Federal inspectors regularly inspected Avondale to ensure compliance.[23]  Second, Herfel explains the government's research on the health hazards posed by asbestos, which dates back to the 1940s, and concludes that a private-sector shipyard, such as Avondale, could not have had greater knowledge of those hazards than did the federal government.[24]

## II.    PENDING MOTION

Sentilles argues that Herfel's testimony and opinions should be excluded from trial, citing a lack of qualifications and improper methodology.[25]  Sentilles contends that Herfel is unqualified to render the opinions expressed in his report because he is not an industrial hygienist and does not have a degree in naval or maritime history or policy.[26]  Sentilles further argues that Herfel's methodology is flawed, and his testimony is prejudicial to Sentilles, because (1) Herfel did not review any documents or depositions related to the history of Avondale shipyard, particularly those pertaining to asbestos, (2) Herfel's references to the Occupational Safety and Health Administration and other safety standards are irrelevant, and (3) Herfel has no work experience related to interpreting contracts.[27]  Sentilles also argues that Herfel's testimony is prejudicial because the jury may believe that he speaks for the government considering that he is a former Navy officer.[28]

---

[22] *Id.* at 11, 46-48.
[23] *Id.* at 46-52.
[24] *Id.* at 25-35, 50-52.
[25] R. Doc. 325-1 at 5-13.
[26] *Id.* at 5-6.
[27] *Id.* at 8-10.
[28] *Id.* at 11-12.

In opposition, Avondale argues that Herfel's education, work experience, and research qualify him to render the opinions expressed in his report.[29]  Specifically, Avondale argues that "Herfel is uniquely qualified, based on training and experience, *to explain and provide context* for the historic policies, practices, and knowledge of the U.S. Navy, Coast Guard, and MARAD, and specifically with respect to asbestos-containing materials required by those entitles on the [f]ederal [v]essels at issue in this case."[30]  Avondale states that Herfel is not being presented as an industrial hygienist or Avondale shipyard historian, and it is irrelevant that he does not have a history degree because his research, training, and experience educated him in the historic practices of the Navy, Coast Guard, and MARAD.[31]  Avondale further argues that Herfel's historical research methodology is sound and peer review is unnecessary in Herfel's field, which is not scientific.[32]  Additionally, Avondale contends that Herfel's testimony would be helpful to the jury because he uses his knowledge and experience to explain complex government records on shipbuilding specifications, policies, and procedures.[33]  Avondale points out that other courts have accepted Herfel as an expert, and that his testimony is not prejudicial because Sentilles can test Herfel's opinions through cross-examination and countervailing testimony and other evidence.[34]

## III.    LAW & ANALYSIS

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires

---

[29] R. Doc. 346 at 9-12.
[30] *Id.* at 10 (emphasis in original).
[31] *Id*. at 10-12, 15.
[32] *Id*. at 12-14.
[33] *Id.* at 14-15.
[34] *Id.* at 15-21.

a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.  *See Daubert*, 509 U.S. at 592-93.  In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community.  *Id.* at 593-95.  However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted).  In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.  The party offering the testimony must establish its reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as

7

unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

Considering Sentilles's motion, Avondale's opposition, and Herfel's report and qualifications, the Court finds that Herfel's education, experience, and research qualify him to render the opinions expressed, and that those opinions are relevant and reliable. Herfel, a marine engineer who worked in a shipyard and was in the Navy, has two decades of experience researching the government's shipbuilding practices, particularly those related to the use of asbestos. *See Jackson v. Avondale Indus. Inc*, 469 F. Supp. 3d 689 (E.D. La. 2020) (accepting Herfel's affidavit at the jurisdictional stage because he was qualified to discuss government contracts that required Avondale to use asbestos-containing insulation on government vessels). Herfel's testimony will give context to Avondale's work on federal vessels and help the jury to understand the government's requirement that asbestos-containing materials be used on its vessels, the government's role in supervising the shipbuilding process, Avondale's adherence to the relevant government directives, and the historic information the government had concerning the health hazards of asbestos. These topics are beyond the knowledge and experience of an average juror. In sum, Herfel is qualified to render the opinions stated in his report, and these opinions are relevant and reliable and will be helpful to the jury in understanding the issues in this case.

8

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Sentilles's motion *in limine* to exclude Herfel (R. Doc. 325) is

DENIED.

New Orleans, Louisiana, this 4th day of October, 2024.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE